NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISCTRICT OF NEW JERSEY

_____

MARY JONES,

        Plaintiff,

        v.

THE EWING TOWNSHIP BOARD OF
EDUCATION, *et al.*,

        Defendants.
_____

Civil Action No. 3:09-cv-3536 (FLW)

**OPINION**

This matter comes before the Court on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure brought by defendants, Ewing Township Board of Education (the "Board"), Superintendent Dr. Timothy Wade, and Fisher Middle School Principal Warren D. Schuster (collectively, "Defendants"). The allegations giving rise to the instant Complaint stem from the sexual assault of Plaintiff, a Fisher Middle School student, by another student shortly after she departed a school bus. Plaintiff asserts claims under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq.* ("NJLAD"), the Civil Rights Act, 42 U.S.C. § 1983, violations of the New Jersey and federal Constitutions, and state common law claims against Defendants and others arising out of the assault. Defendants' motion to dismiss is limited to the claims brought under § 1983 and the NJLAD in Counts I, II and III of Plaintiff's Complaint. For the reasons that follow, Defendants' motion to dismiss is GRANTED in part and DENIED in part and Plaintiff is directed to file within twenty days a Third Amended Complaint that is in accordance with this Court's Opinion and Order.

I.     Background

The following version of events assumes Plaintiff's allegations in the Second Amended Complaint (the "Complaint")[1] to be true because Defendants move pursuant to Fed. Civ. R. P. 12(b)(6). The Court will recount only those facts relevant to this motion.

In 2004, Plaintiff Mary Jones was fourteen years old and was enrolled as a student at Fisher Middle School ("School"). Compl. ¶¶ 1, 15. On March 24, 2004, Plaintiff traveled home from School via school bus. Shortly after departing the school bus, Plaintiff was sexually assaulted by fellow student Roy Doe. Id. at ¶ 18. Roy Doe was subsequently convicted of rape. Id. at ¶ 16. Plaintiff alleges that on the day in question, Roy Doe was improperly allowed to ride on Plaintiff's school bus, which was not his assigned bus. Id. at ¶ 21. Plaintiff further alleges that Defendants were aware of Roy Doe's violent propensities and sexually inappropriate behavior prior to his attack on Plaintiff and, despite this knowledge, Defendants allowed Roy Doe to continue attending classes at Fisher Middle School and took no steps to protect young female students, including Plaintiff. Id. at ¶¶ 28, 45, 56.

Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey, Mercer County on April 30, 2009. The case was removed to the District of New Jersey on July 16, 2009.

---

[1] On December 22, 2009, subsequent to the filing of the instant motion to dismiss, Plaintiff filed a Second Amended Complaint following this Court's decision on a motion to dismiss brought by other defendants in this action. The substance of Counts I, II, and III remain unchanged in the Second Amended Complaint. Accordingly, as discussed more fully infra, Defendants motion to dismiss will be deemed to apply to the Second Amended Complaint.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009);  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

**III.  Discussion**

Before considering the merits of the instant motion to dismiss, this Court must first address a preliminary matter. Plaintiff filed the First Amended Complaint on June 18, 2009. Thereafter, on July 23, 2009, Defendants moved to dismiss Counts I, II and III. Defendants Stout's Charter Service, Inc. and its sole shareholder, Harry J. Stout, III, (the "bus company defendants") likewise moved to dismiss in July 2009, but as to all counts raising claims against them. By Order dated November 13, 2009, this Court partially granted the motion to dismiss brought by the bus company defendants. On December 22, 2009, before this Court ruled on Defendants' motion to dismiss Counts I, II and III of the First Amended Complaint, Plaintiff filed a Second Amended Complaint to reflect this Court's ruling on the bus company defendants' motion and to add claims against additional parties, namely Vice-Principal Yolanda Armstrong, Vice Principal Barbara Brower and Superintendent Raymond Broach, in their individual and official capacities.

"An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit." Snyder v. Pascack Valley Hospital, 303 F.3d 271, 276 (3d Cir. 2002). Accordingly, "an amended complaint supersedes the original complaint and renders it of no legal effect." Stacey v. City of Hermitage, No. 02-1911, 2008 WL 282458, *

4

4 (W.D.Pa. Jan. 31, 2008). Here, the filing of the Second Amended Complaint technically rendered Defendants' pending motion to dismiss Plaintiff's claims in the First Amended Complaint moot. See, e.g., Greater Cincinnati Coalition for the Homeless v. City of Cincinnati, No. 08-603, 2009 WL 3029661, * 3 (S.D.Oh. Sep. 16, 2009). Nevertheless, "a defendant 'should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.' Rather, '[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'" Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC, 417 F.Supp.2d 632, 642 n. 15 (D.N.J. 2006) (quoting 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2005) (*internal citations omitted*)). Therefore, the Court will consider the arguments raised in Defendants' motion to dismiss as if they were directed at Plaintiff's Second Amended Complaint (hereinafter referred to simply as the "Complaint").

**A. Defendants' Motion to Dismiss Counts I and III**

The grounds asserted for dismissal of Counts I and III are based upon Plaintiff's purported failure to establish a *prima facie* case under the NJLAD. As Plaintiff points out, however, Defendants' motion to dismiss Count I in its entirety is flawed in that the NJLAD claim is not the only claim raised in Count I. Plaintiff also raises vague claims under the New Jersey Civil Rights Act and the New Jersey Constitution, as well as negligence claims, none of which are addressed in Defendants' motion to dismiss Count I. Additionally, while Defendants appear to limit their discussion of Plaintiff's § 1983 claim to the dismissal of Count II, it is clear to the Court that Plaintiff also raises a § 1983 claim in Count I under the state-created danger doctrine. Accordingly, this Court's consideration of Defendants'

motion to dismiss Counts I and III will be limited to the NJLAD claims raised therein. However, as discussed more fully, infra, the Amended Complaint to be filed by Plaintiff in accordance with this Opinion should parse out Plaintiff's claims into separate counts of the Complaint to avoid confusion.

The New Jersey legislature enacted the NJLAD to eradicate "the cancer of discrimination." Jackson v. Concord Co., 54 N.J. 113, 124, 253 A.2d 793, 799 (1969). The NJLAD provides in relevant part: "All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex . . . subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right." N.J.S.A. § 10:5-4. In L.W. ex rel. L.G. v. Toms River Regional Schools Board of Education, 189 N.J. 381, 915 A.2d 535 (N.J. 2007), the New Jersey Supreme Court recognized a cause of action for hostile school environment under the NJLAD. To state such a claim, "an aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct." Id. at 402. "[A] school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination. Joyce v. City of Sea Isle City, No. 04-5345, 2008 WL 906266, * 23 (D.N.J. Mar. 31, 2008) (citing L.W., 915 A.2d at 548). "[I]n

6

evaluating the adequacy of the school's response to peer harassment, the factfinder 'must determine the reasonableness of a school district's response to peer harassment in light of the totality of the circumstances." Id.

Citing Counts I and III of the Complaint, Defendants jointly contend that Plaintiff has failed to establish a *prima facie* case under the NJLAD. Defendants seek dismissal of Count I, wherein Plaintiff alleges that she was sexually assaulted after departing the school bus, which assault was caused by the negligence of defendants based "upon information and belief," that "Ewing School District officials" knew or should have known that the assailant had violent propensities toward female students and their actions were in violation of the NJLAD. Br. at 4 (citing Compl. ¶¶ 18, 22, 23, 25).[2] Similarly, Defendants seek dismissal of Count III wherein Plaintiff alleges that the assault would not have occurred but for the fact that she was a female and that Defendants failed to "reasonably address harassment and/or prevent sexual harassment and sexual misconduct, which had the ultimate effect of denying Plaintiff the School's accommodations, advantages, facilities and/or privileges." Br. at 5 (citing Compl. ¶¶ 52, 53). The Court will address both Counts I and III together as both allege that Defendants engaged in conduct that created a hostile and abusive educational environment in violation of the NJLAD.

Defendants concede, as they must, that peer harassment claims such as Plaintiff's are actionable under the NJLAD. Nevertheless, Defendants seek dismissal of Plaintiff's NJLAD claims on the grounds that Plaintiff has failed to aver what actions any of the Defendants undertook that directly caused or contributed to Plaintiff's injuries.

---

[2]     Citations to the Complaint reflect the corresponding paragraphs in the Second Amended Complaint.

Defendants argue that Plaintiff fails to adequately plead that "defendants knew or should have known that Roy Doe had created a hostile educational environment as to plaintiff, such that moving defendants' actions or inactions were unreasonable under the circumstances."  Br. at 8-9.  Accordingly, the only issue for the Court on the instant motion is whether Plaintiff has alleged sufficient facts to support a hostile educational environment claim under the NJLAD.[3]

Having reviewed Plaintiff's hostile educational environment claim set forth in Counts I and III, this Court finds that the allegations in the Complaint are minimally sufficient to sustain Plaintiff's claim against Defendant Ewing Township Board of Education.  Throughout the Complaint, Plaintiff alleges that Defendants knew or should have known of Roy Doe's violent and sexually hostile propensities and are liable for their combined failure to address and prevent the harassment and sexual misconduct, which Plaintiff claims had the ultimate effect of denying her the School's accommodations, advantages, facilities, and/or privileges.  Plaintiff's hostile school environment claim spans the pre-assault and post-assault time periods.  In Count I, Plaintiff alleges that following the sexual assault, Principal Schuster admitted to Plaintiff's mother that he had prior knowledge of Roy Doe's inappropriate behavior and violent propensities, including the danger that he posed to female students including Plaintiff, and thereby made Plaintiff a "'target' for a sexual attack" by failing to take action.  (Compl. ¶¶ 30, 31).  Additionally, in

---

[3]     Despite Plaintiff's allegation in Count I that Defendants made the situation "far more dangerous for students, such as Plaintiff, who took part in the Special Education classes that Roy Doe was a participant in" and the allegation in Count III that the Defendants acknowledged in March 2007 that she "suffers from post-traumatic stress syndrome and other emotional needs" such that she would "most likely qualify for Special Education services", Plaintiff's hostile educational environment claim appears to be limited to a hostile environment based upon sex rather than disability.

Count III, Plaintiff alleges that a hostile educational environment continued after the sexual assault in that Defendants failed to reasonably address her August 2006 transfer request which was prompted by the fact that "she was being mocked, verbally taunted, and harassed" as a result of the assault and the fact that she "feared reprisal from the perpetrator's family, peers and friends".  (Compl. ¶ 55 a)).  Plaintiff alleges that she did not attend Ewing Schools for the 2005-2006 school year because "she was afraid of the hostile situation/environment she had experienced both before and after the rape incident." (Compl. ¶ 55 b)).  Plaintiff alleges that she again requested accommodations in light of the hostile sexual environment and, despite an October 10, 2006 recommendation by a Board Certified Psychiatrist that Plaintiff be transferred to a different school, Defendants did nothing.  (Compl. ¶ 55 b), c)).  Plaintiff alleges that from August 2006 through the Spring of 2007, when Defendants acknowledged that she suffered from post-traumatic stress syndrome and other emotional needs", she was "left 'in limbo', which damaged her emotional health and general well being."  (Compl. ¶ 55 d), e)).  Plaintiff unequivocally alleges that she "and her mother reported a hostile educational environment arising as a direct result of the rape, including the physical and verbal taunts that Plaintiff had experienced" presumably following the assault.  (Compl. ¶ 55 f)).  Contrary to Defendants' arguments, Plaintiff has indeed alleged, based on Principal Schuster's admission of prior knowledge to Plaintiff's mother, that Roy Doe created a hostile educational environment prior to his attack on Plaintiff and, further, that post attack, Defendants failed to address her request for accommodations in light of the alleged hostile environment she reported. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

9

alleged." See Iqbal, 129 S.Ct. at 1949. Plaintiff has alleged sufficient facts to state a plausible claim for relief under the NJLAD. Accordingly, this Court finds Plaintiff's allegations in Count I and III sufficient to sustain her NJLAD claim against Defendant Ewing Township Board of Education for hostile educational environment spanning the pre-assault and post-assault periods.

Defendants have jointly moved to dismiss the NJLAD claims in Counts I and III solely on the grounds that Plaintiff has failed to establish a *prima facie* case. While Defendants generally argue that the Complaint "is devoid of any allegations that the plaintiff actually reported the alleged incidents of verbal taunts and harassment *to any of the moving defendants* or that any of the moving defendants knew or should have known of the harassment and failed to take action reasonably calculated to end the harassment", (Rep. Br. at 9-10, emphasis in original), Defendants Schuster and Wade fail to raise any legal argument addressing their individual liability under the NJLAD. Nevertheless, the Court notes that an individual within a public entity can only be held liable under the NJLAD as an "aider and abettor". Doe v. Schwerzler, No. 06-3529 (NLH), 2008 WL 4066338, * 5 (D.N.J. Aug. 27, 2008) (quoting Tarr v. Ciasulli, 853 A.2d 921, 928 (N.J. 2004)); see also Connolly v. Mitsui O.S.K. Lines (America), Inc., No. 04-5127 (JLL), 2009 WL 3055378, * 11 (D.N.J. Sep. 21, 2009)(quoting Cicchetti v. Morris County Sheriff's Office, 194 N.J. 563, 594 (N.J. 2008)). In order to be held liable as an aider and abettor, the New Jersey Supreme Court has held that:

> a plaintiff must show that "'(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'"

Tarr v. Ciasulli, 853 A.2d 921, 928 (N.J. 2004) (quoting Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999). While Plaintiff generally avers in the Complaint that "The Ewing School District Defendants aided, abetted, and acquiesced in the harassment practices against Plaintiff or attempted to do so, in violation of the LAD" the only facts even addressing the conduct of the individually named Defendants are those set forth in the allegation in Count I regarding Principal Schuster's admission to Plaintiff's mother following the attack that he had prior knowledge of Roy Doe's prior problems. (Compl. ¶¶ 30, 31). To meet the requirement of facial plausibility under Iqbal, however, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 129 S.Ct. at 1949. Plaintiff has plead no factual content that would permit this Court to draw a reasonable inference that the individually named Defendants are liable for aiding and abetting under the NJLAD. Accordingly, the Court will dismiss without prejudice Plaintiff's aiding and abetting claims against the individually named Defendants, subject to Plaintiff's right to replead. In the Third Amended Complaint, Plaintiff must sufficiently address the individual liability of each individual Defendant or face a renewed challenge for dismissal from Defendants on this basis.

**B. Defendants' Motion to Dismiss Count II**

Defendants seek dismissal of Count II of the Complaint on the grounds that Plaintiff has failed to establish a *prima facie* case under 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code provides a private cause of action against any person who, acting under color of state law, deprives another of rights, privileges, or immunities

11

secured by the Constitution or laws of the United States.  The statute, in and of itself, is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred."[4]  Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (quotations omitted).  To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Adickers v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

As previously noted, while Defendants limit their discussion of Plaintiff's § 1983 claim to the dismissal of Count II, it is clear to the Court that Plaintiff also raises a § 1983 claim in Count I under the state-created danger doctrine and additionally includes within Count I allegations regarding deliberate indifference on the part of Defendants in support of the § 1983 claim raised in Count II.  Although not a model of clarity, the Complaint appears to allege that Defendants violated the substantive due process protections of the Fourteenth Amendment in two respects.  In Count I, Plaintiff appears to allege that Defendants are liable for a "state-created danger."  In Count II, Plaintiff alleges that Defendants developed "a policy, practice and/or custom of failing to take action with respect to complaints of sexual harassment and sexual misconduct by fellow students,

---

[4]  42 U.S.C. §1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

which directly and proximately caused Plaintiff's constitutional harm." Compl.¶ 42.

It is well established that a municipality cannot be held liable for the constitutional violations of its employees "unless action pursuant to official municipal policy of some nature caused a constitutional tort" to be committed by such employees. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Indeed, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Accordingly, a municipality cannot be held liable solely on the basis of the theory of *respondeat superior*. Id. at 691; see Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (finding allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject" plaintiff to discrimination insufficient to sustain § 1983 supervisory liability claim). Most recently, in Chambers v. School District of Phila., 587 F.3d 176, 193 (2009), the Third Circuit reiterated what is required to establish a § 1983 action against a governmental entity under this theory:

> "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (alteration, internal quotation marks and citation omitted). Customs are 'practices of state officials so permanent and well settled as to virtually constitute law." Id. (alteration, internal quotation marks and citation omitted). "[I]t is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). "Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (internal

13

>  quotation marks and citation omitted.)  "If . . . the policy or custom
> does not facially violate federal law, causation can be established
> only by demonstrating that the municipal action was taken with
> deliberate indifference as to its known or obvious consequences.  A
> showing of simple or even heightened negligence will not suffice."
> Id. (internal quotation marks and citations omitted).

The "state-created danger" theory, on the other hand, has its genesis in the Supreme Court's decision in DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  Under the state-created danger doctrine, a state "may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger."  Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir. 2006).  To state a meritorious substantive due process claim under the doctrine, the Third Circuit has determined that the following essential elements must be met:

> (1) the harm ultimately caused was foreseeable and fairly
> direct;
>
> (2) a state actor acted with a degree of culpability that shocks
> the conscience;
>
> (3) a relationship between the state and the plaintiff existed
> such that the plaintiff was a foreseeable victim of the
> defendant's acts, or a member of a discrete class of persons
> subjected to the potential harm brought about by the state's
> actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way
> that created a danger to the citizen or that rendered the citizen
> more vulnerable to danger than had the state not acted at all.
> [Id.]

In their briefing to the Court on the instant motion to dismiss Plaintiff's § 1983 claim, the parties' arguments are at cross-purposes.  Defendants focus their arguments on Count II of the Complaint, arguing that Plaintiff has failed to aver sufficient facts to

support a finding that Defendants acted with deliberate indifference and, further, point out that Plaintiff fails to address in opposition to the instant motion Defendants' arguments that she has not identified a policy, practice or custom that caused the deprivation. Significantly, Defendants contend that "Plaintiff argues that 'deliberate indifference' was also alleged in paragraphs 22, 32 and 34 (d) of the First Amended Complaint. However, these paragraphs contained in Count[] I . . . of the First Amended Complaint did not address plaintiff's Section 1983 claim." (Rep. Br. at 4, n. 1). Contrary to Defendants' assertion, however, Plaintiff has indeed raised the § 1983 claim in Count I. In numerous paragraphs in Count I, incorporated by reference in Paragraph 39 of Count II, Plaintiff alleges conduct which she claims amounts to deliberate indifference on the part of Defendants. Additionally, while not expressly labeled as such, Count I of the Complaint can be fairly read to assert a § 1983 claim based on the state-created danger theory.[5] Indeed, in opposition to the instant motion, Plaintiff asserts that "her 'state-created danger' claims under § 1983 should be allowed to proceed and the Ewing Defendants' motion should be denied." Yet, Defendants' moving papers are utterly silent as to Plaintiff's state-created danger claim. In light of the apparent confusion among the litigants as to Plaintiff's § 1983 claims, this Court finds that it is unable to rule on the instant motion to dismiss.

Pursuant to Fed. R. Civ. P. 10(b), a party is required to parse out claims into separate counts when the claims are "founded on a separate transaction or occurrence" and "doing so would promote clarity". Here, where Plaintiff has alleged injuries resulting from

---

[5] In so finding, this Court does not rule upon the adequacy of the claim. Indeed, Defendants have not moved on this basis. Rather, the Court is simply stating that Plaintiff appears to raise such claim in Count I.

15

Defendant's pre-assault and post-assault purportedly unconstitutional conduct, the Plaintiff's Complaint is arguably deficient for its failure to delineate those claims into separate counts. However, even if the Complaint is not *per se* deficient, it is clear to the Court that the confusion created by the fact that Plaintiff asserts multiple causes of action in the same counts, warrants an Order directing that Plaintiff file a Third Amended Complaint clarifying in separate counts of the Complaint the specific legal rights she believes Defendants violated.

The Court cautions that in the Third Amended Complaint, Plaintiff should also be cognizant of the factual specificity required to support each cause of action and as to each Defendant. As noted by the Court in connection with the ruling on Plaintiff's NJLAD claims, the only factual allegations involving the individually named Defendants are those concerning Principal Schuster's admission to Plaintiff's mother following the attack that he had prior knowledge of Roy Doe's problems. (Compl. ¶¶ 30, 31). The Complaint is silent as to the personal involvement of Superintendent Wade, or the newly added individual defendants Vice-Principal Yolanda Armstrong, Vice Principal Barbara Brower and Superintendent Raymond Broach. "It is well-established that '[a] Defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .'" McCain v. Abraham, 337 Fed.Appx. 141, 142 (3d Cir. 2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability can be established 'through allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 143. Accordingly, the Third Amended Complaint must contain factual allegations averring personal involvement on the part of the individually named Defendants or face renewed challenge from Defendants.

16

## IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss Counts I and III of Plaintiff's Complaint is GRANTED in part and DENIED in part and Plaintiff's NJLAD claims against the individually named defendants are dismissed without prejudice subject to Plaintiff's right to replead.  Plaintiff's motion to dismiss Count II is DENIED and Plaintiff is directed to file an Amended Complaint within twenty days of the Court's Opinion and Order that is in keeping with the instant Opinion and sets forth in separately delineated counts Plaintiff's causes of action and also pleads the individual liability of each defendant.


Dated: February 26, 2010

                                                                /s/ Freda L. Wolfson
                                                               **United States District Judge**