**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                               :

MARY JONES,                   :
                               :   Civil Action No. 3:09-cv-3536 (FLW)
                               :

        Plaintiff,           :
                               :

           v.               :
                               :               **OPINION**

THE EWING TOWNSHIP BOARD OF  :
EDUCATION, _et al._,          :
                               :
                               :

       Defendants.       :
_____:

Presently before the Court is a Motion to Dismiss Plaintiff's Third Amended Complaint ("Complaint") brought by Defendants Ewing Township Board of Education, Principal Warren Schuster ("Schuster"), Superintendent Dr. Timothy Wade ("Wade"), Vice-Principal Barbara Brower ("Brower"), Vice-Principal Yolanda Armstrong ("Armstrong") and Superintendent Raymond Broach ("Broach") (collectively "Defendants"). The instant motion arises from a Complaint filed by Plaintiff, a student at Fisher Middle School, who was sexually assaulted by another student (hereinafter "Roy Doe") shortly after departing a school bus. Plaintiff has asserted claims for negligence under New Jersey common law as well as claims under the Civil Rights Act, 42 U.S.C. § 1983, the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq.("NJLAD"), and claims arising under the New Jersey Constitution. The instant motion is limited to the claims brought under Counts I, II, III, IV, and VI. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, Counts

II and III are dismissed against Defendants Wade and Broach; Count IV and VI are dismissed against all moving Defendants.

## I. BACKGROUND

In addressing Defendants' Motion to Dismiss, this Court must accept as true the allegations contained in the Complaint. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir.2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1301 (3d Cir.1996). Thus, the facts recited herein are taken from the Third Amended Complaint, and exhibits appended thereto, and do not represent this Court's factual findings.

In 2004, Plaintiff Mary Jones was fourteen years old and was enrolled as a student at Fisher Middle School ("School"). Compl. ¶¶ 1, 16. On March 24, 2004, shortly after departing the school bus, Plaintiff was sexually assaulted by fellow student, Roy Doe. Id. ¶¶ 14, 18. Roy Doe was subsequently convicted of rape. Id. Plaintiff alleges that on the day in question, Roy Doe was improperly allowed to ride on Plaintiff's school bus, which was not his assigned bus. Id. ¶ 21.

Plaintiff further alleges that Defendants were aware of Roy Doe's violent propensities and sexually inappropriate behavior prior to his attack on Plaintiff. Id. ¶ 22, 26. Indeed, Plaintiff alleges that Roy Doe was involved in at least two previous sexual assaults on Fisher school students. The first incident of sexual assault occurred on May 23, 2003, when Roy Doe sexually assaulted an eighth grade female student in the hallway of the School. Id. ¶ 38. As a result, the Defendant was taken into custody by the Ewing Police Department on June 19, 2003, and placed on probation. Id. ¶¶ 38, 40. In addition, Plaintiff alleges that in May 2003, Roy Doe attempted to sexually assault Plaintiff. Id. ¶ 47. Moreover, Plaintiff contends that during the year prior to

the March 2004 assault, she had notified Defendants on numerous occasions that she was being

harassed by Roy Doe.  Id. ¶ 46.  Moreover, Plaintiff alleges that there have been numerous other

incidents involving Roy Doe and other students.  Id. ¶ 48.   Despite this knowledge, Plaintiff

contends that Defendants permitted Roy Doe to continue attending classes at School and took no

steps to supervise Doe and/or protect young female students, including Plaintiff.  Id. ¶¶ 26, 27,

47.


## II. STANDARD OF REVIEW

When reviewing a motion to dismiss, courts "accept all factual allegations as true,

construe the complaint in the light most favorable to the plaintiff, and determine whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell

Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6)

standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S.

41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual

allegations set forth in a complaint "must be enough to raise a right to relief above the

speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly

formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a

complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does

not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough

facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211. In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).[1]

_____

[1]The Court notes that Plaintiff has attached a Certification and substantial documentation in connection with his opposition to Defendants' Motion to Dismiss. A number of these documents are not directly incorporated in, nor attached to, the Third Amended Complaint and the Court will not consider any improperly attached or unreferenced documents in reviewing this Motion to Dismiss. See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir.1998) ("When deciding a motion to dismiss, it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.1993) (holding that although Court's generally only consider matters in the complaint,

## III. DISCUSSION

In the instant matter, Defendants move to dismiss Counts I, II, III, IV and VI of Plaintiff's Third Amended Complaint against each of the moving Defendants for various reasons. Specifically, Defendants contend that this Court should dismiss: (1) Plaintiff's claims for individual liability against Defendants Wade and Broach for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) Plaintiff's claims under § 1983 and NJLAD against Defendants Schuster, Armstrong and Brower for failure to state a claim under 12(b)(6); (3) and Plaintiff's 1983 claims against all Defendants for failing to establish a prima facie case. The Court will consider Defendants' arguments as to each Count of the Complaint.

### A. Count I: Negligence

Count I of Plaintiff's Complaint asserts a cause of action for negligence against all Defendants including Defendants Wade and Broach. Defendants move to dismiss all the claims against Wade and Broach, including Count I, in their individual capacities. However, Defendants do not move specifically with regard to the allegations of negligence set forth in Count I; instead, Defendants generally argue that because the Complaint, including Count I, "is completely devoid of a single factual averment as to the individual liability of Superintendent Wade or Superintendent Broach" and because the Complaint does not "specifically aver what actions or inactions individual defendants Wade or Broach undertook that directly caused or

---

exhibits attached to the complaint, and matters of public record in deciding a motion to dismiss, the Court may also consider "a concededly authentic document upon which the complaint is based when the defendant attaches it to a motion to dismiss")

contributed to plaintiff's injuries," Plaintiff's cause of action for negligence should be dismissed against Wade and Broach in their individual capacities.

Initially, the Court notes that the Complaint does not specify what type of negligence claim Plaintiff is asserting against any of the Defendants including Wade and Broach. Instead, Count I generally alleges that Defendants Wade and Broach were negligent in creating, allowing or failing to prevent Plaintiff's injuries. Compl. ¶ 54. Specifically, Plaintiff contends, in relevant part, that each of the Defendants, including Wade and Broach, had a duty to supervise and protect Plaintiff, id. ¶ 55, and were negligent in that they: (1) failed to protect students within their supervisory control; (2) failed to properly supervise; (3) failed to properly train school employees including appropriate methods of handling students with violent or criminal tendencies; (4) failed to establish a proper methods for the documentation and reporting of sexually assault; and (5) failed to properly investigate, respond and notify authorities of allegations of sexual abuse of students by other students. Id. ¶¶ 54, 56. Moreover, Plaintiff alleges that as a result of Defendants' failure to "enforce proper and effective policies . . . regarding: (a) security; (b) supervision of special needs students; (c) supervision of violent or sexually inappropriate Middle School students; and (d ) handling, investigating, and preventing students with violent and/or inappropriate sexual propensities from injuring and harassing other students," the Plaintiff has suffered injuries. Compl. ¶ 62. In light of Plaintiff's allegations, the Court finds that, at the least, the Complaint can be read to allege a cause of action for vicarious liability and negligent training/ supervision against Wade and Broach. Compl. ¶¶ 58, 59, 61. However, the Court must still consider whether Plaintiff has alleged sufficient facts to support Count I.

Under New Jersey law, an employer can be held liable to a third party under a theory of respondeat superior for the torts of an employee if the employee was acting within the scope of his or her employment.  Carter v. Reynolds, 175 N.J. 402, 408-09 (2003); Dixon v. CEC Entertainment, Inc., Docket No. L-4087-04, 2008 WL 2986422, at *16 (App. Div. 2008).   In determining whether employee conduct is within the scope of employment, New Jersey courts consider the "nature of the employment, the duties of the employee, [and] whether the accident occurred in the course of fulfilling some job-related function." Carter, 175 N.J. at 411.

 In addition, in New Jersey, courts permit Plaintiffs to raise claims for negligent training or negligent supervision separate and apart from any claim based on respondeat superior liability. Indeed, claims for negligent training or supervision "may be imposed on an employer who fails to perform its duty to train and supervise employees."  Dixon, 2008 WL 2986422, at *18.   An employer may be liable for negligent hiring or negligent supervision "if all the requirements of an action of tort for negligence exists . . . Thus, a person conducting an activity through agents is subject to liability for harm resulting from the agents' conduct if the person is negligent or reckless 'in the supervision of activity.'" Id. (citations and quotations omitted.)

At the time of the assault, it is undisputed that Defendants Wade and Broach were the Superintendents of the Ewing Township School District.  Compl. ¶¶ 7,8.  Although it is not made explicit in the Complaint, the Court infers that in their positions with the School District, Wade and Broach were responsible for the operation and administration of Fisher Middle School, including the supervision and training of School teachers and administrators.  Thus, the Complaint can fairly be read to allege that in their supervisory capacity, Wade and Broach had a duty to keep Plaintiff safe.  Indeed, the New Jersey Supreme Court has explained that:

"[e]ducators have '[n]o greater obligation . . . than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others. . . . School officials have a general duty 'to exercise reasonable supervisory care for the safety of students entrusted to them, and [are accountable] for injuries resulting from failure to discharge that duty.'" Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 296-97 (N.J. 2007)(citations and quotations omitted).   Moreover, the Complaint alleges that Wade and Broach breached their duty to Plaintiff  by, inter alia, failing to properly train and supervise teachers and administrators in how to deal with Roy Doe and other students with criminal backgrounds.  Compl. ¶ 24.  In light of these allegations, the Court finds that there is a reasonable expectation that discovery will reveal facts pertaining to Wade and Broach's supervisory and administrative roles that would implicate liability based on a theory of respondeat superior or negligent supervision/hiring.  Thus, at the pleading stage, the Court finds that Plaintiff's Complaint sufficiently alleges a claim for respondeat superior and/or negligent training/supervision against Wade and Broach and the Court will not grant Defendants' Motion to Dismiss Count I.


B. Count  II& III- Causes of Action pursuant to 42 U.S.C. § 1983

     Plaintiff's Complaint asserts two causes of action arising under 42 U.S.C. §1983.  Count II asserts a cause of action pursuant to the state-created danger theory and Count III asserts a cause of action for the establishment and maintenance of an unconstitutional policy, practice or custom.  42 U.S.C. §1983 provides a private cause of action against any person who, acting under color of state law, deprives another of "rights, privileges, or immunities secured by the

Constitution" or laws of the United States.  42 U.S.C. § 1983.   The statute is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-394 (1989).  To recover under section 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the constitution or laws of the Untied States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

1. State Created Danger v. Ewing Defs.

Count II of Plaintiff's Complaint asserts a cause of action pursuant to 42 U.S.C. § 1983 under the state-created danger doctrine.   Defendants contend that Count II should be dismissed for two reasons: first, Defendants argue that Count II should be dismissed against Wade, Broach, Schuster, Armstrong and Brower for failure to state a claim; in addition, Defendants contend that Count II should be dismissed against all Defendants because Plaintiff has not established a prima facie case of state-created danger under 42 U.S.C. § 1983.

The substantive due process right to be free from state-created danger stems from the Supreme Court's opinion in DeShaney v. Winebago County  Dep't of Social Services, 489 U.S. 189 (1989).  There, in assessing whether the state could be held liable for failing to protect a four-year old child from his abusive father, the Court explained that "while the state may have been aware . . . of the dangers . . it played no part in their creation, nor did it do anything to render [the plaintiff] more vulnerable to them."  489 U.S. at 201.   The Third Circuit has interpreted DeShaney to mean that "a state may be liable  for constitutionally protected rights, even in the absence of a special  relationship with an individual, when the state, through its

affirmative conduct, creates or enhances a danger for the individual." Brown v. Pennsylvania Dep't of Health Emergency Medical Services Training Ins., 318 F.3d 473, 478 (3d Cir. 2003). In other words, under the state created danger theory, "the state may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger." Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir. 2006).

To state a meritorious claim under the state-created danger doctrine, the Third Circuit has held that the following essential elements must be met: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Kaucher, 455 F.3d at 431.

i. State Created Danger v. Schuster, Brower, Armstrong and Ewing Township Board of Education

To satisfy the first element of a state created danger claim on a motion to dismiss, "a plaintiff must . . . plead that the harm ultimately caused was a foreseeable and fairly direct result of the state's actions." Morse v. Lower Merion School District, 132 F.3d 902, 908 (3d Cir. 1997). Here, Plaintiff clearly alleges that Defendants Schuster, Brower and Armstrong knew of Roy Doe's violent propensities towards female students, including towards Plaintiff, in

particular. Specifically, Plaintiff contends that Schuster, Brower and Armstrong were aware of at least one previous sexual assault that Roy Doe had committed on another student as well as a previous attempt to sexually assault Plaintiff prior to the assault that is at issue in this case. Compl. ¶¶ 37, 38, 40, 45, 47. Indeed, because the Complaint alleges that Schuster, Brower and Armstrong knew of at least one prior incident between Plaintiff and Roy Doe, "[m]ere randomness. . . is not at work," Caissie v. City of Cape May, 619 F.Supp. 2d 110, 119 (D.N.J. 2009), and the Complaint can fairly be read as alleging "harm that occur[ed] to an identifiable or discrete individual under the circumstances" as opposed to "harm that occur[ed] to a random individual with no connection to the harm-causing party." Phillips, 515 F.3d at 239 (citing Morse, 132 F.3d at 909). For these reasons, the Court finds that the Complaint satisfies the first element of a state created danger claim as to Schuster, Brower and Armstrong.

Second, the Complaint must show that a "state actor acted with a degree of culpability that shocks the conscience." Caissie, 619 F.Supp. 2d at 217. To determine whether a Plaintiff has satisfied this element, the Third Circuit employs a sliding scale "upon which the degree of culpability required to establish such a claim must be measured, relating to the circumstances of each case." Phillips, 515 F.3d at 240. For guidance, the Third Circuit has held that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." Sanford v. Stiles, 456 F.3d 298, 309 (3d Cir. 2006). Thus, when "a defendant is confronted with a hyperpressurized environment such as a high-speed chase . . . it is usually necessary to show that the officer deliberately harmed the victim." Kaucher, 455 F.3d at 426 (quotations and citations omitted). However, when "a defendant has the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the

conscience." <u>Id</u>.

Defendants contend that Plaintiff has failed to demonstrate that moving defendants acted with deliberate indifference. However, on a motion to dismiss, all that is required is that Plaintiff sufficiently allege deliberate indifference on the part of the Defendants such that the shocks the conscience element is satisfied. Here, as discussed above Plaintiff alleges that Schuster, Brower and Armstrong knew of Roy Doe's violent tendencies towards female students including towards Plaintiff. Compl. ¶¶ 37, 38, 40, 45, 47. For example, the Complaint alleges that in August 2003, the Mercer County Prosecutor's Office sent a letter to Schuster regarding Roy Doe's prior assault on another Fisher student that occurred on School property. Compl. ¶ 37. Indeed, the letter itself states that although the information contained in the letter "shall be treated as confidential [it] may be made available to such members of the staff and faculty of the school as you deem appropriate for maintaining order, safety or discipline in the school or for planning programs relevant to the juvenile's educational and social development." Compl. ¶ 37, Ex. A. Despite receiving this letter, Plaintiff contends that neither Schuster nor any of the other Defendants took any steps to ensure that Doe was properly supervised or to protect Plaintiff or any other students from Roy Doe. Compl. ¶¶ 56, 65. Moreover, Plaintiff alleges that throughout the year, she and her mother notified Defendants that Roy Doe was harassing Plaintiff and that Defendants did nothing to prevent the ongoing harassment. Compl. ¶ 46. For these reasons, the Court finds that Plaintiff's allegations satisfy the second prong of the state-created danger claim.[2]

---

[2]Because Defendants do not dispute that Plaintiff, a student at Fisher, satisfies the third element of the test, i.e. that she would be a foreseeable victim of danger created by the school, the Court finds that Plaintiff has satisfied the third element of the state-created danger test. Defs.' Br. at 16.

Finally, Defendants argue that Plaintiff has not pled any affirmative act by the Defendants which would satisfy the fourth element of the state-created danger test. Under this fourth prong, a plaintiff must show that "that a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Caissie, 619 F. Supp. 2d at 118. Indeed, under the fourth prong, "[t]he crucial question in dispute is whether any of the . . . defendants took an affirmative action . . .to render [Plaintiff] more vulnerable than they would have been had the state not acted at all." Doe v. Allentown School Dist., Civil Action No. 06-CV-1926, 2007 WL 2814587, at *3 (E.D. Pa. Sept., 21, 2007). Thus, the fourth element of a state-created danger claim "is predicated upon the states' affirmative acts which work to the plaintiff's detriments in terms of exposure to danger. . . It is the misuse of state authority, rather than a failure to use it that can violate the Due Process clause." Bright, 443 F.3d at 282 (citations and quotations omitted); D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992)(en banc).

Importantly, the Third Circuit has acknowledged that while "the line between action and inaction may not always be clear, we have never found a state danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282(citations omitted). In other words, "[a]llegations that the State merely failed to take action to protect an individual against private action do not state a claim for relief under the Due Process Clause." Ortiz ex rel. Smith v. New Jersey Div. of Youth and Family Services, 2008 WL 1767019, at *5 (D.N.J. 2008) (citations omitted). Moreover, "an assurance by the state that it will act to protect an individual, coupled with a failure to do so, is not a state created danger." Brown v. School Dist. of Philadelphia, Civil Action No. 08-2787, 2010 WL

2991741, at *4 (E.D. Pa. July 28, 2010).

In D.R., for example, students at Middle Bucks Vocational School brought constitutional and state law actions against school officials who failed to protect them from sexual assaults from their classmates. 972 F.2d at 1375-76. Although plaintiffs did not inform the teacher that the assaults were occurring, the plaintiffs claimed that the teacher should have been present in the classroom and aware of the danger. There, the Third Circuit held that the officials were not liable because they had not created the danger to students. Id.

However, Third Circuit precedent also suggests that a school district's efforts to conceal knowledge of sexual assaults and to dissuade students from reporting these assaults may form a basis for liability for the assaults themselves. Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-725 (3d Cir. 1989). Although Stoneking is arguably different from this case because there the acts of violence were committed by a state employee rather than a third party, the source of liability for the school officials was not the violence, but the school officials' attempt to conceal the violence. Id. at 724-725.

Here, as discussed above, Plaintiff alleges that Defendants are liable pursuant to a state-created danger theory for numerous reasons including: failure to protect students; failure to properly monitor students within their control; failure to train employees; failure to establish a protocol for reporting sexual assault; failure to investigate allegations of sexual abuse; failure to respond properly to allegations of sexual assault; failure to notify authorities of sexual abuse; and the creation of a hostile school environment where sexual assault was "tolerated, condoned and left unpunished." Compl. ¶ 24. Although the majority of these allegations pertain to Defendants' alleged passive failures which would not be a source of liability under the

14

state-created danger doctrine, the Court also finds that several of the allegations against Schuster, Brower and Armstrong  may fairly be read to allege concealment.  For example, Plaintiff alleges that despite their knowledge of Roy Doe's previous violence towards female students, Defendants failed to notify the authorities of sexual abuse, took no steps to protect students and condoned the abuse.  Id.  Because Plaintiff has sufficiently alleged concealment on the part of Schuster, Brower and Armstrong, at this stage in the litigation, before the factual record is fully developed, the Court will deny Defendants' Motion to Dismiss as to Count II with regard to Schuster, Brown, Armstrong and the Ewing Township Board of Education.  However, the Court cautions that as discovery proceeds, Plaintiff's counsel must focus on discovering the actions that Defendants' took, rather than on actions they failed to take, if Plaintiff wants her claim for state-created danger to survive a summary judgment motion.  See Doe v. Allentown School District, 2007 WL 2814587, at *6.


ii.  State Created Danger v. Superintendents Wade and Broach

As discussed above, in order to adequately plead a claim for state-created danger, a plaintiff must allege that an individual took some affirmative action which rendered the plaintiff more vulnerable than they would have been without state action.  Caissie, 619 F. Supp. 2d at 118.  As discussed above, Plaintiff does not aver any specific facts regarding Defendants Wade and Broach; specifically, and in relevant part, Plaintiff does not plead that Wade or Broach had actual knowledge of Roy Doe's criminal background or of his previous assault on Plaintiff or other Fisher students.  Nor does Plaintiff allege that Wade or Broach took any affirmative actions whatsoever with regard to Roy Doe.  Thus, even if Plaintiff could satisfy the first three prongs of

the state-created danger test with regards to Wade and Broach, the Court finds that Plaintiff has failed to allege any facts that would satisfy the affirmative act requirement of the state-created danger test with regard to Superintendents Wade and Broach and the Court will dismiss Count II against Wade and Broach.

2. Count III – 42 U.S.C. § 1983 - Unconstitutional Policies/Practices and Customs

Count III of Plaintiff's Complaint asserts a cause of action pursuant to 42 U.S.C. §1983 against Defendants. Specifically, Plaintiff alleges that Defendants instituted a policy, practice or custom of deliberate indifference with regard to sexual harassment, sexual misconduct, bus transportation safety, the supervision and safety of students and the training of staff that resulted in Plaintiff's injuries. In their motion, Defendants contend that Count III should be dismissed for two reasons: first, Defendants argue that Count III should be dismissed against Wade, Broach, Schuster, Armstrong and Brower in their individual capacity for failure to state a claim. In addition, Defendants contend that Count III should be dismissed against all moving Defendants because Plaintiff has not established a prima facie case of deliberate indifference under 42 U.S.C. §1983.

As set forth in this Court's previous Opinion, it is well-established that a municipality cannot be held liable for the constitutional violations of its employees "unless action pursuant to an official municipal policy of some nature caused a constitutional tort" to be committed by such employees. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978). Indeed it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury

that the government as an entity is responsible under (section sign) 1983." <u>Id</u>. at 694. Thus, a governmental entity cannot be held liable solely on the basis of the theory of respondeat superior or vicarious liability. <u>Id</u>. At 691. In order for a governmental entity to be liable for the violation of a constitutional right under § 1983, a plaintiff must identify a policy or custom of the entity that caused the constitutional violation. <u>A.M. ex rel. J.M.K, v. Luzerne County Juvenile Detention Center</u>, 372, F.3d 572, 580 (3d Cir. 2004). In <u>Chambers v. School District of Philadelphia</u>, 587 F.3d 176, 193 (3d Cir. 2009) the Third Circuit explained:

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict . . . Customs are practices of state officials so permanent and well settled as to virtually constitute law . . It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom. . .Once a (section) 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged…If the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.

<u>Id</u>. (internal citations and quotations omitted).

The Third Circuit has explained that there are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir.2003). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."

Id.  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " Id. (footnote and citations omitted).

In the instant matter, Plaintiff has not alleged the existence of an affirmative official policy that caused Plaintiff's harm.  Instead, the Court understands Plaintiff's Complaint to allege that it was the custom of Ewing Township Board of Education as expressed through the individually named Defendants to condone and ignore sexual abuse by students and that this custom and practice resulted in Plaintiff's injuries.  In response, Defendants argue that Plaintiff has not alleged a "pattern of persistent and unconstitutional practices" sufficient to establish a policy, practice or custom.   Defs' Br. at 19.  Moreover, Defendants argue that Plaintiff has not identified a policy attributable to the moving Defendants and has not shown a causal link between the policy and Plaintiff's injury.  Id. at 20.  The Court does not agree.

To begin, the Court notes that despite Defendants' contention that "[a] single incident is insufficient to establish a policy, practice or custom," the Court finds that the Complaint alleges that Schuster, Brower and Armstrong were aware of at least two prior assaults perpetrated by Roy Doe prior to the March 24, 2004 assault on Plaintiff.   Compl. ¶¶ 37, 38, 40, 45, 47.  Moreover, Plaintiff alleges that she became aware of other incidents involving Roy Doe including that, in or around November or December 2003, Doe attempted to pull a female student into the boy's locker room and assault her.  Id. ¶ 48.  In addition, Plaintiff contends that in the year prior to the March 2004 assault, she and her mother notified the school of ongoing harassment perpetrated by

Roy Doe.  Id. ¶ 46. Thus, as discussed above, because the Complaint appears to contain an

allegation that Defendants failed to notify authorities of the alleged assaults and did not take any

measures to halt the assaults, the existence of a custom or practice with regards to sexual abuse

are fact-sensitive inquiries that cannot be settled on a motion to dismiss.  See Doe v. Allentown,

2007 WL 2814587, at * 8.  Thus, the Court will not dismiss Count III as to Schuster, Brower and

Armstrong.

However, as noted in this Court's previous opinion, "[i]t is well-settled that [a] defendant

in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be

predicated solely on the operation of respondeat superior." McCain v. Abraham, 337 Fed. Appx.

141, 142 (3d Cir. 2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Indeed, liability can only be established "through allegations of personal direction or of actual

knowledge and acquiescence." Id.  Thus, to withstand dismissal, a complaint alleging civil rights

violations must contain factual allegations averring personal involvement on the part of the

individually named Defendants.   Here, the Complaint does not contain any factual averments

regarding Wade and Broach's personal involvement in the alleged establishment or maintenance

of a custom or practice of condoning and/or ignoring complaints of sexual abuse by students.

Indeed, the Complaint does not specifically aver whether Wade and Broach knew of Roy Doe

and his criminal background.  Thus, the Court will dismiss Plaintiff's causes of action under 42

U.S.C. §1983 against Wade and Broach.


C. Count IV—NJLAD

Count IV of the Complaint alleges a cause of action for hostile educational environment

in violation of NJLAD, N.J. Stat. Ann. 10:5-1. Defendants contend that Count IV should be dismissed against individual Defendants Wade, Broach, Schuster, Brower and Armstrong for failure to state a claim.

The NJLAD provides, in relevant part: "All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex . . . subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized and declared to be a civil right." N.J.S.A (section) 10:5-4. In <u>L.W. ex rel. L.G. v. Toms River Regional Schools Board of Education</u>, 189 N.J. 381 (N.J. 2007), the New Jersey Supreme Court recognized a cause of action for hostile educational environment under the NJLAD. There, the Court held that "to state a claim under the LAD, an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile or offensive school environment and tha the school district failed to reasonably address such conduct." <u>Id.</u> at 402-403. "A school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination." <u>Joyce v. City of Sea Isle City</u>, No. 04-5345, 2008 WL 906266, at * 23 (D.N.J. March 31, 2008). In evaluating the adequacy of the school's response to peer harassment, the factfinder "must determine the reasonableness of a school district's response to peer harassment in light of the totality of the circumstances." <u>L.W.</u>, 189 N.J. at 551.

However, the New Jersey Supreme Court has held that "an individual within a public entity can only be held liable under the NJLAD as an 'aider or abettor." Doe v. Schwerzler, No. 06-3529, 2008 WL 4066338, at *5 (D.N.J. Aug. 27, 2008). In order to be held liable as an aider and abettor, the New Jersey Supreme Court has explained that a plaintiff must show that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." Tarr v. Ciasulli, 853 A.2d 921, 928 (N.J. 2004) (internal quotations and citations omitted). In order to determine whether a defendant provided "substantial assistance," a court may consider: (1) the nature of the act encouraged; (2) the amount of assistance provided by the defendant; (3) whether defendants was present at the time of the alleged harassment; (4) the defendant's relations to the others; and (5) the defendant's state of mind. Id. Moreover, "with regard to supervisor liability, a supervisor has a duty to act against unlawful gender-based harassment . . . Therefore, a supervisor can be individually liable when he breaches this duty through deliberate indifference to the harassing conduct. . . Individual liability, however, even in the context of failure to act, 'require[s] active and purposeful conduct." Schwerzler, 2008 WL 4066338, at *5(citations and quotations omitted).

In the instant matter, the Court notes that the Complaint, while not a model of clarity, appears to allege that the wrongful conduct at issue was Defendants' deliberate indifference to ongoing sexual abuse and harassment by Roy Doe against female students at Fisher including Plaintiff. Specifically, Plaintiff alleges that Schuster, Brower and Armstrong knew of Doe's previous assaults on Fisher students including a previous assault on Plaintiff. Compl. ¶¶ 29, 37-

40, 45-47.  Moreover, Plaintiff alleged that  the Defendants ignored and condoned Roy Doe's conduct despite Plaintiff and her mother notifying Defendants that Plaintiff was being harassed by Doe in the year prior to the assault.  Compl.¶ 46.  Although Plaintiff alleges deliberate indifference on the part of Defendants, Plaintiff has not alleged any facts to support the requirements of aiding and abetting.  Indeed, in this Court's previous Opinion, I expressly cautioned Plaintiff that she must sufficiently address the liability of each individual Defendant or face a renewed challenge for dismissal.  Because Plaintiff has pled no factual content concerning the individual Defendants' "active and purposeful" support of the sexual abuse, there is no factual basis that would permit this Court to draw a reasonable inference that Defendants  were liable for aiding and abetting under NJLAD and the Court will dismiss Count IV as to the individual Defendants.

### D. Count VI – Violation of the New Jersey Constitution

Count VI of the Complaint alleges that Defendants violated the New Jersey Constitution. Importantly, the Complaint does not identify a particular Constitutional provision or statute that Defendants purportedly violated.   Instead, Plaintiff contends that the Defendants, while acting under color of state law, deprived Plaintiff of constitutional rights and privileges arising under the New Jersey Constitution including the "right to be free from intrusions into her personal privacy and bodily integrity."   As discussed below, the Court will dismiss Count VI as to all Defendants.

Initially, the Court notes that Plaintiff has not alleged any facts with regard to the personal involvement of Wade and Broach.  Thus, as with Plaintiff's cause of action under §1983, the

Court will dismiss Count VI against Wade and Broach.

Moreover, the Court also finds that Plaintiff's failure to articulate a particular constitutional provision or statute requires the dismissal of Count VI against all Defendants. In an effort to construe the Complaint in favor of the non-moving party, the Court understands Count VI to allege a constitutional violation under the state constitution akin to that arising under 42 U.S.C. § 1983. Importantly, while the New Jersey Constitution contains neither the term "due process" nor the phrase "equal protection", Article 1, paragraph 1 "has been interpreted guaranteeing the fundamental rights of life, liberty, and property." K.J. ex rel. Lowry v. Div. of Youth and Family Svcs., 363 F.Supp.2d 728, 745 (D.N.J., 2005). In Lowry, the court confronted the question of whether or not the New Jersey Constitution permits a private right of action when the government violates a person's due process rights. The Lowry court held that it did not. Id. at 745-47. Similarly, as with the due process component of the Article, there is no private right of action for money damages for equal protection violations, except in the employment context. Lowry, 363 F.Supp.2d at 746 ("Those cases permitting a private right of action for a violation of an individual's rights under the New Jersey Constitution appear to be limited to employment discrimination under equal protection").[3] In light of precedent which holds that there is no

---

[3] The Lowry court examined the New Jersey legislative scheme in reaching its conclusion. In relevant part, the court considered New Jersey Civil Rights Act ("NJCRA"), N.J.Stat. Ann. §§ 10:6-1, which was passed in September 2004 and was modeled after § 1983. Importantly, however, the court explained that the NJCRA "does not include a right of action for private parties. Instead, it creates a civil claim for deprivations of an individual's 'substantive rights, privileges or immunities' secured by the State Constitution or laws, enforceable by the State Attorney General." Lowry, 363 F.Supp. 2d at 746 (quoting N.J. Stat. Ann. § 10:6-2 ( "the Attorney General may bring a civil action for damages and for injunctive or other appropriate relief.... If the Attorney General proceeds with and prevails in an action brought pursuant to this subsection, the court shall order the distribution of any award of damages to the injured party and shall award reasonable attorney's fees and costs to the Attorney General.")(emphasis added)).

private right of action under the New Jersey Constitution, and because Plaintiff has failed to identify a particular statute giving rise to a cause of action under the New Jersey Constitution, the Court will dismiss Count VI as to all the moving Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, Counts II and III are dismissed against Defendants Wade and Broach; Count IV and VI are dismissed against all moving Defendants.

Dated: November 9, 2010          /s/ Freda L. Wolfson
                                              Freda L. Wolfson, U.S.D.J.